WEYMAN v. PERRY.

1. SEALED NOTE—DELIVERY—PURPOSE—AGENCY.—A sealed note for $700, payable to D. in ninety days, for "printing supplies, including type, &c.," was signed by five obligors, and at the same time the two first named gave to the other three obligors, as their sureties, a mortgage of the printing material, to be bought of D., and other property. The note was left with the first obligor, who discounted it with plaintiff for $670, and then purchased type and other printing supplies from D. for $580, paying to him $500 in cash, realized from the discount, and leaving title in D. to secure the remaining $80. Afterwards D. endorsed this note to plaintiff without recourse. *Held*, that the note carried notice on its face that it was not operative until delivered to D. (which was never done) for printing supplies, and that, therefore, the plaintiff could not recover from the last three obligors on this note.

2. IBID.—IBID.—IBID.—EVIDENCE.—Other terms than those expressed in the note could not be proved so as to affect the absent obligors, and, therefore, testimony of D. was inadmissible to show his intention in refusing to receive the note in payment, suggesting a discount and accepting its proceeds, and in afterwards assigning this note.

3. IBID.—IBID.—IBID.—NONSUIT.—The testimony being that the note was never delivered to D., and was assigned by him some time after its discount by plaintiff, and its diversion from the purpose expressed on its face, a nonsuit was proper.

4. IBID.—IBID.—IBID.—AGENCY.—The fact that $500 of the note was used in purchasing printing supplies did not make the obligors liable to that extent. By this action their mortgage security was defeated.

5. DELIVERY—AGENCY—EVIDENCE.—D. having refused to accept the note, no statement made by his agent was competent testimony against defendant.

Before IZLAR, J., Greenville, March, 1893.

Action by Samuel T. Weyman and G. W. Connors, partners as Weyman & Connors, against B. F. Perry and others, commenced May 31, 1892.

*Messrs. Haynsworth & Parker*, for appellants.

*Messrs. Cothran, Wells, Ansel & Cothran, G. W. Dillard*, and *J. W. Gray*, contra. .

October 29, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. The plaintiffs brought their action against the defendants in the Court of Common Pleas for Greenville County, in this State, to recover from them the sum of $700, and interest thereon at eight per cent. per annum from the 3d day of February, 1892, and $2.10, fees for protest of a sealed note. The defendants, B. F. Perry and W. T. Connors, did not answer, but the defendants, J. P. Latimer, T. C. Gower, and J. W. Gray, did answer, denying any liability to pay the plaintiffs the sums sued for, or any part thereof. The action came on for trial before his honor, Judge Izlar, and a jury at the spring term, 1892, of the Court of Common Pleas for Greenville County, in this State. Judgment by default was taken against defendants, B. F. Perry and W. T. Crews. After the plaintiffs had closed their testimony, the defendants, who had answered, moved for a nonsuit upon the grounds that plaintiffs had failed to prove a delivery of the note, and, also, that the consideration of the note had been changed. In an order therefor, the Circuit Judge granted the nonsuit, dismissing the complaint with costs.

The plaintiffs now appeal upon the following grounds, to wit: 1. That his honor erred in refusing to permit the witness, W. C. Dodson, to testify as to his intention in suggesting to B. F. Perry to discount the note in suit, and of his intention as to assignment thereof. 2. That his honor erred in refusing to permit the witness, W. C. Dodson, to testify of his intention and understanding in accepting from B. F. Perry the proceeds arising from his so discounting the note. 3. That his honor erred in holding that the said note had not been delivered, and was not, therefore, a binding obligation of the defendants, Latimer, Gower, and Gray. 4. That his honor erred in holding that said note had been diverted from the purpose for which it was intended, and was, therefore, not binding upon such defendants. 5. That his honor erred in not holding that the said note had been delivered, and that, at least to the extent of five hundred dollars, it had been practically used for the purpose intended, and was, therefore, to that extent binding upon such defendants. 6. That his honor erred in granting a nonsuit, it being submitted that there was sufficient evidence to cause the

case to go to the jury.   7. That his honor erred in refusing to admit the statement of Johnson, the credit man of Dodson, made to the plaintiff, it being submitted that these statements were made in the course of his agency.

It seems to us that this case can be decided very readily in the light of our adjudicated cases.   What is the contract here? It is a sealed note, in these words and figures: "$700.   Ninety days after date, we or either of us promise to pay W. C. Dodson, of Atlanta, Ga., seven hundred dollars, with interest from date at eight per cent. per annum, value received in printing supplies, including type, &c.   Witness our hands and seals, this February 3d, 1892.   B. F. Perry (L. S.), W. T. Crews (L. S.), J. P. Latimer (L. S.), T. C. Gower (L. S.), J. W. Gray (L. S.)"

The following is a brief summary of the facts of the case, whose mention may be advisable to understand the present controversy: B. F. Perry and W. T. Crews, of Greenville, S. C., desired to embark in the printing business.   In order to do so, they needed some printing supplies, including types, &c. They applied to their neighbors, J. P. Latimer, T. C. Gower, and J. W. Gray, to assist them.   It seems Perry had previous to that time been in correspondence with Mr. W. C. Dodson, of the city of Atlanta, in the State of Georgia, as to these supplies. The result of it was that a sealed note for $700, due at ninety days, payable to said Dodson for such supplies, was written and signed by all the parties.   With this sealed note, B. F. Perry visited Mr. Dodson in Atlanta, Ga., and after some discussion as to, and selection of, printing supplies, Perry tendered the note in payment, but Dodson assured him that he had quoted his printing supplies at spot cash figures, and that no note, however good, would be taken in payment for such supplies. Mr. Dodson suggested that some one else might discount the note and thereby enable Perry to pay cash for what he should buy of him.   Perry then sought out the plaintiffs, and they after seeing a Mr. Johnson, the head man of the credit department of W. C. Dodson's business, discounted the note, paying Perry in cash $670.   Perry then returned to W. C. Dodson and bought a bill of $580 worth of printing supplies for him, and paid $500 in cash, leaving $80 still due, which he secured

27—42

by leaving title in such supplies in Dodson. Some days, it may be a month, Dodson conceiving that the plaintiff was *prima facie* owner of the sealed note, endorsed it but without recourse. The note was not paid at maturity, was duly protested at a cost of $2.10, and plaintiffs sued thereon.

The parties to the record make this admission: "It is admitted that, under the laws of Georgia, this is not a negotiable note." It is certainly not a negotiable note in this State. Hence it falls under the laws regulating unnegotiable paper. The obligee is fixed as W. C. Dodson, of Atlanta, Ga. The consideration is also fixed as printing supplies, including type, &c. It is a familiar principle of law, that when several obligees place an unnegotiable paper, by them duly signed, in the hands of one or more of several obligors, the act of such obligor or obligors, within the scope of his or their agency for the other obligors, is the act of all of such obligors, and that any misrepresentation or wrong doing while acting within the scope of his or their agency, is visited upon the heads of the obligors and not upon that of the obligee.

This leads us to inquire what was the scope of the agency of B. F. Perry for the other obligors to this obligation? It was expressed in the bond itself to be the procuring of printing supplies, including type, &c., from W. C. Dodson, of Atlanta, Ga. The bond itself, therefore, carried notice to every one who dealt with such paper of the terms of this agency. They were bound at their peril to regard such terms and not go beyond them. One of these terms was: that the bond was not to be operative until delivered to W. C. Dodson, of Atlanta, Ga. Another of these terms was, that the bond was not to be operative until delivered to W. C. Dodson, of Atlanta, Ga., for printing supplies, including type, &c. So, therefore, when plaintiffs' proofs established that the bond was never delivered to W. C. Dodson for printing supplies, including type, &c., but, on the contrary, was negotiated by Perry with the plaintiffs for money, and no ratification of such diversion of power was in proof by the other obligors, it was fatal to plaintiffs' case. *Mills* v. *Williams*, 16 S. C., 600; *Gourdin* v. *Commander*, 6 Rich., 497.

It was not error for the Circuit Judge to refuse to allow W. C. Dodson to testify as to what his intention was in suggesting to Perry to discount the note in suit, and of his intention in assigning the same afterwards to the plaintiffs; for the reason that until it was proved that these co-obligors, Latimer, Gower, and Gray, had given Perry other powers of agency at variance with those expressed in the bond or sealed note, such power of agency so expressed in the note itself must govern, and proof of any conduct of any persons at variance with the terms of the sealed note other than Latimer, Gower, and Gray, was incompetent. So the first exception is overruled. Nor could the plaintiffs, at the trial, prove what the intention and understanding of W. C. Dodson was, in accepting the proceeds of Perry's discounting such note to the plaintiffs. The defendants, Latimer, Gower, and Gray, had the right to restrict the plaintiffs to the terms of the agency as set out in the note itself, which evidenced their contract, unless the plaintiffs first showed that additional powers had been given to Perry by these parties defendant. Testimony should be restricted by the Circuit Judge, on the trial had before him, to the matters within the proper scope of the issues before him. It is true, sometimes the trial judge allows parties to anticipate other proof, but it is always, in such cases, with the understanding that such missing links are to be supplied later on in the trial. So the second exception is overruled.

His honor did not err in holding that, under the proofs tendered by the plaintiffs, there had been no delivery; for the witness, W. C. Dodson, testified emphatically that the sealed note was never delivered to him, and that he only assigned it to plaintiffs sometime after it had been discounted by plaintiffs for $670 in cash for Perry. It was the plaintiffs' misfortune that the facts were as testified to by Dodson, and, as we have seen, the defendants at bar had the right to stand upon a delivery to W. C. Dodson, of Atlanta, Ga., and these proofs showing that no such delivery had been made, the Circuit Judge did not err in this matter. The diversion of the note from the purpose expressed upon its face, was established by the testimony, and, therefore, the Circuit

Judge did not err, as is charged in the fourth ground of appeal.

The fifth ground of appeal imputes error to the Circuit Judge, in that he did not hold that to the extent of $500 the plaintiffs were entitled to recover. The testimony showed that when Perry tendered the note now sued on to W. C. Dodson, in payment of printing supplies, including type, &c., that Dodson refused to accept the delivery of such note, and that, under that condition of things, Dodson suggested to Perry to go elsewhere and have the note discounted, so that he could pay cash for such printing supplies. This Perry did by obtaining a discount of such note by the plaintiffs for $670, and that of this sum ($670), Perry paid Dodson $500 in part payment of $580 worth of printing supplies. But see the effect of this action of Perry and Dodson. Perry, on 3d February, 1892, on the day the note was signed by the defendants, gave them a mortgage on the printing supplies, including type, &c., he was to purchase from Dodson.[1] All these facts were recited in the mortgage, which mortgage was introduced by the plaintiffs themselves. Now, this security to the obligors, defendants, was defeated by Dodson retaining to himself the ownership of all the printing supplies sold to Perry until the $80 was paid, thus defeating the mortgage given the defendants here. Why should these defendants be required to split up their contract, or rather their liability under their contract as expressed in the sealed note, to prevent a loss to the plaintiffs to the extent of $500? In law, these defendants have a right to stand upon their contract as they made it. Certainly, the position contended for by plaintiffs would alter that contract. We agree with the Circuit Judge, and, therefore, overrule the fifth exception.

We fail to see how it can be considered that there was any testimony to go before the jury. We have examined the record carefully, and fail to note its existence in this case. The sixth exception is overruled.

Lastly, it is contended that his honor ought to have admitted

---

[1] This mortgage described Gower, Latimer, and Gray as sureties for Perry and Crews.

the testimony of Mr. Johnson, the credit man of W. C. Dodson, on the ground that such remarks were made in the course of his agency for said Dodson. If Dodson, as obligee of the bond, had accepted the same, then, possibly, these declarations of his agent might have been introduced by plaintiffs; but when Dodson refused to accept the bond or sealed note, Dodson could no longer, as to these defendants, do anything to bind them. If he could not, certainly his agent could not. The exception is overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.